**UNITED STATES ex rel. STENECK et al. v. LEVY, United States Marshal.** *

(District Court, N. D. Illinois, E. D. January 31, 1925.)

Nos. 35089–35092.

**1. Criminal law ⬤⟲242(8)—Commissioner, in removal proceedings, should pass only on issue of probable cause.**

Court commissioner, in removal proceedings under Rev. St. U. S. § 1014 (Comp. St. § 1674), should only pass on issue of probable cause.

**2. Criminal law ⬤⟲242(5)—In removal proceedings under federal statute, presentation of indictment makes more than mere prima facie case.**

Presentation of indictment in removal proceedings under Rev. St. § 1014 (Comp. St. § 1674), establishes more than prima facie case in favor of government, and imposes on defendant burden of making strong case, to justify finding of no probable cause.

*Judgment affirmed 45 S. Ct. —, 69 L. Ed. —.

**3. Criminal law ⬤⟲242(9)—Commissioner's ruling in removal proceedings not res judicata.**

Ruling of commissioner, in removal proceedings under Rev. St. § 1014 (Comp. St. § 1674), refusing to order prisoner removed to another federal district for trial, is not res judicata on issue of probable cause.

**4. Criminal law ⬤⟲242(9)—District Judge's right to hear removal proceedings not affected by prior hearing before commissioner, who found no probable cause.**

Under Rev. St. § 1014 (Comp. St. § 1674), when commissioner in removal proceedings has made finding of no probable cause and refused to order prisoner removed, new proceedings may be instituted before District Judge, whose right to hear such proceedings is not affected by prior proceedings before commissioner.

Habeas Corpus. Proceeding by the United States, on the relation of J. R. Steneck and others, against Robert R. Levy, United States Marshal. On motion to quash writ. Motion granted.

Butler, Lamb, Foster & Pope, Stephen A. Foster, Herbert Pope, Allan J. Carter, Frank E. Harkness, Alden, Latham & Young, and Harris C. Lutkin, all of Chicago, Ill., for relators.

Edwin A. Olson, U. S. Atty., and James G. Cotter, Sp. Asst. U. S. Atty., both of Chicago, Ill., and Roger Shale and Russell Hardy, Sp. Asst. Attys. Gen., for respondent.

EVAN A. EVANS, Circuit Judge. The four petitioners herein, Steneck, Rutz, Wanner, and Fauntleroy, were on March 27, 1924, indicted, along with some 90 others, and charged with a violation of the Sherman Anti-Trust Act (Comp. St. § 8820 et seq.). Certain defendants were arrested, or appeared and filed demurrers or motions to quash, and challenged the sufficiency of the indictment. A decision favorable to the government on this issue followed, whereupon the government has since sought to remove the individual defendants, who reside in many states other than Ohio, the place of trial. The individual defendants (including petitioners) have opposed such removal proceedings, and this writ of habeas corpus is prosecuted to prevent further effort on the part of the government to remove petitioners from Illinois. Both parties recognize the right to remove exists under section 1014, R. S. (Comp. St. § 1674).

The government first sought to remove petitioners by applying to Court Commissioner Glass, of this district. He found against the government and dismissed the proceedings. The government then institut-

ed proceedings before Judge Cliffe, and while such proceedings were so pending, but before a hearing, petitioners secured the issuance of this writ of habeas corpus, upon the ground that the proceedings before the court commissioner were final and a bar to another application in the same action.

The object of the statute is so obvious that it is hardly necessary to state it. One accused of crime is entitled to a trial in the district wherein the offense was committed. The government cannot and should not be permitted to force an accused to trial in a district far removed from the scene of the alleged offense. Likewise one who commits an offense against the government should not be permitted to escape the consequences of his criminal misconduct by moving to another state and defying the prosecution. To meet this situation, section 1014 was enacted. By it a procedure was outlined, whereby one accused of crime might be removed to the place of trial, which was also the place where the crime was committed.

Such difficulties as have arisen over the application of this statute are due to the fact that offenses to-day may, and often do, involve a large number of individuals, who reside in different and remote parts of the United States. In some of these crimes, the prosecution may be conducted in one of several judicial districts, because the offense is in fact committed in different districts. This is particularly true of such offenses as conspiracy, scheme to defraud, and the use of the mails in furtherance thereof, and violations of the Anti-Trust Act. If the defendants named in the indictments be numerous, and they reside in various districts, oppositions to removal may be successfully used as dilatory tactics. They may greatly delay the criminal prosecution. The result is more readily accomplished when the court commissioner misconceives his duties and sits as a trier of guilt and a reviewing court to pass upon the decisions and rulings of the court wherein the case is pending.

[1, 2] The court commissioner should only pass upon the issue of probable cause. The government is not required to prove defendants' guilt to the satisfaction of each and every commissioner who may be asked to direct the removal of the accused. The court commissioner is not to review the evidence upon which the grand jury acted and set his judgment against the finding of the body created by law to vote and return indictments. He should ascertain whether the individual before him is one of the defendants named in the indictment, and the gov-

ernment must convince him that there is probable cause to believe such defendant is guilty of the offense charged in the indictment. Tinsley v. Treat, 205 U. S. 20, 27 S. Ct. 430, 51 L. Ed. 689. This probable cause is ordinarily established by the indictment, and when an indictment is presented the burden shifts to the defendant to overcome the prima facie case thus disclosed. In fact, it is much more than a mere prima facie case. It requires a strong case on the part of the accused to justify a finding of no probable cause.

But further discussion of the duties of the commissioner is beside the controversy. The question presented is a very narrow one. The foregoing statement serves merely as a background to assist in determining whether the commissioner's action in finding a want of probable cause is conclusive or a bar to a similar proceeding before the judge. That the court commissioner's action is not res adjudicata must be conceded. In fact, it is not so contended by petitioners. In their brief it is said:

"We contend that, even if the former adjudication cannot be pleaded as res adjudicata in the technical sense, there are other rules of law which prevent the government from rearresting and retrying, without reference to the propriety of the action in the first tribunal, defendants who have already been discharged in the first proceeding. In applying, therefore, for a hearing de novo, without attempting to show any error upon the part of Commissioner Glass or the existence of new evidence, the government is in fact claiming the right to retry an issue which has already been litigated and rightly decided."

Throughout the brief there are references to "res adjudicata in the technical sense" and "not technically res adjudicata"—refinement of distinctions being made which, I confess, I do not appreciate. If the determination by Court Commissioner Glass is not res adjudicata, then what authority is there for the writ of habeas corpus to prevent Judge Cliffe from hearing the matter? There is not the slightest suggestion that the judge before whom the present application is pending will not give to the decision of the court commissioner such weight as it deserves. Yet by this writ of habeas corpus it is sought to deny to Judge Cliffe the right to hear the removal proceedings and such position cannot be sustained by questioning whether he will give to the court commissioner's finding such weight as petitioners believe it is entitled to receive. Conceding

the right to a hearing under any circumstance, the foundation upon which the habeas corpus proceedings were instituted crumbles.

[3] A decision is res adjudicata only when certain facts exist. Those facts are so decidedly absent here as to dispense with any discussion of them. Analogous situations likewise need not be cited to show that the ruling of the commissioner is not res adjudicata upon this issue of probable cause. One case, United States v. Haas (D. C.) 167 F. 211 (decision by Judge Holt, May 9, 1906), justified special reference. The court said:

"The defendant's counsel claims that the decision of Commissioner Ridgway should be held to be conclusive. He admits that such a decision is not technically res adjudicata, and the authorities so hold. The decision of a committing magistrate refusing to hold a prisoner for trial or removal, like the grand jury's decision in refusing to find an indictment, is not res adjudicata, and another application can be made upon the same facts. In re Martin, 5 Blatch. 307, Fed. Cas. No. 9,151; Cooley's Const. Lim. 404; 1 Bish. New Cr. Law, § 1014, par. 2; Com. v. Hamilton, 129 Mass. 479."

[4] It is not necessary to stress other objections to this procedure by writ of habeas corpus. The petition before Judge Cliffe did not even disclose the prior proceedings before Commissioner Glass. The judge, therefore, was clearly authorized to proceed with the hearing. He was not permitted to do so, because this writ of habeas corpus was secured. It is difficult to escape the conclusion that this proceeding was for the purpose of delay, and such practices should be condemned. I have, however, investigated the legal question, and expressed these views to facilitate, if possible, the final disposition of the matter.

The motion to quash the writ of habeas corpus is granted. Let an order be entered accordingly.